Oldham, J. The first question to be determined is, whether the Circuit Court properly overruled the exceptions of the plaintiffs in error, to the answer of the defendants in error to the plaintiffs’ petition for discovery. The petition charges, that Conway and Reyburn, from time to time, purchased various goods, wares, merchandize and groceries, from Turner & Woodruff, who were merchants in the city of New Orleans, and had given them special instructions, to insure all goods or groceries purchased of them, or that might be purchased of them thereafter, and by them to be shipped to Conway and Reyburn. That in all their shipments, made to the order of the petitioners, prior to the shipment of the goods constituting the foundation of the present action, said Turner and Woodruff had uniformly obeyed said special instructions to insure. That the shipment of the goods and groperies which were the subject matter of the action as aforesaid, was without any insurance whatever against the dangers and risks of the river; that they were shipped from New Orleans to Little Rock, and, through the dangers and risks-of the river, were totally lost, from the loss of the vessel in which they were shipped: That the said special instructions to insure was a fact lying peculiarly within the knowledge of the plaintiffs below, except the defendant Conway. The petition propounds six interrogatories, and calls upon the plaintiffs below to answer them: 1. What instructions did they receive from the defendants, or either of them, in relation to the insurance of all goods and groceries sold by the plaintiffs to defendants? 2. Were not all goods and groceries purchased of the plaintiffs by the defendants, insured when shipped under special instructions to insure in all cases, &c.? 3. Were the goods and groceries which were the subject matter of the action then pending, insured at all? 4. If there was no insurance on the same, state the reason why insurance was not effected on them, as upon previous shipments? 6. In what vessel or steam-boat were they shipped? 6. When was said vessel or steam-boat lost or sunk, and where? The amended answer filed by the plaintiffs to the petition, states, that, on the first day of April, 1837, the defendants purchased of the plaintiffs the several articles mentioned in the bill of particulars in this suit, amounting, altogether, including drayage, to $398.18, that on the 8th day of April, 1837, the plaintiffs shipped the goods to Messrs. Pitcher & Walters, at Little Rock, for the defendants, on board the steam-boat “Compromise,” which boat, as the respondents were informed and believe, shortly afterwards, on her passage up to Little Rock, was sunk some where in the Arkansas river. The answer admits that the plaintiffs had received general instructions to insure in all cases of sale and shipment to the defendants; That the reason why insurance upon the goods and groceries was not effected, was, that under general instructions, it was not the custom among merchants in New Orleans, to effect insurance where the amount was under five hundred dollars; that, under such general instructions, and in the absence of any special instructions to insure in all cases, or to insure any particular shipments, it was customary to insure where the amount of the shipment was five hundred dollars and over. That, when instructed generally to insure, that the respondents would understand it to mean that they should observe the rule established by the above custom. That the respondents had effected insurance upon goods and groceries; sold by them previous to the first day of April, 1837, as charged in the petition, was true, but expressly denies that it was in obedience to any such special instructions. The answer positively denies that the goods and groceries were totally lost, through the dangers and risks of the river, and the loss of the vessel in which they were shipped, but that the defendants actu-'' ally received the whole of them, at the hands of Messrs. Pitcher <fc Walters, the consignees, at Little Rock, in all convenient season after the sinking of the “Compromise;” that the only articles materially injured, and which are specified in the answer, amounted, in all, to the value of $37.68 — leaving the residue of the bill, amounting to $360.50, either wholly uninjured or not materially damaged by the loss of the boat. The first exception to the answer, is, that the respondents, without being interrogated thereto, slate that said goods were shipped to Pitcher & Walters for said' defendants. That statement was wholly immaterial. We do not perceive that the liability of the defendants would at all be changed, or that any advantage or disadvantage would result to them, from the fact that the goods were consigned to Pitcher &• Walters, for them. The second exception taken is, that the respondents set up their own usage, and the custom of merchants in New Orleans, as an excuse for not insuring said goods, without showing whether said Conway and Reybum knew of such usage before any dealings with the respondents. This statement in the answer, is a direct response to the fourth interrogatory propounded by the petition, and is given as the reason why the goods were not insured'. Whether such a custom afforded any excuse or defence to the plaintiffs, for failing to procure insurance on the goods, is not raised by the exceptions to the answer. Being called upon for the reason why they did not effect insurance, it was legitimate for the respondents to give it; but it was the province of the court to charge the jury as to its legal effect, upon the answer being read to them as evidence. The third and last exception is, that the answer is argumentative, irresponsive, and uncertain. The statements of the answer are directly responsive to the allegations and interrogatories in the petition, and are explicit, positive and certain. It is true, that the petition sets up several facts which the respondents might have excused themselves from answering, because they were in the knowledge of witnesses, and confined their answer to that part of the petition alleged to have been within their own knowledge; but having answered fully, it is not for the party who called upon them ■'for such an answer, to object that it was given. But, had the answer gone on to set up independent facts not responsive to the allegations and interrogations in the petition, for jthe purpose of making evidence for the respondents, the case would be different. But, were the decision in the court below wrong, in point of law, in overruling the exceptions to the answer, the plaintiffs in error were not injured by that decision, because they had the advantage of every statement contained in their petition, by improperly reading their own answer as evidence for themselves to the petition of discovery filed by the defendants in error. The remaining question is, whether the court properly overruled the motion for a new trial. The first ground assumed in favor of the motion is, “that the plaintiffs having filed a petition for discovery, and obtained an answer, should be required to read it to the jury:” and failing to read it to the jury, their verdict in his favor should be set aside and a new trial granted to the opposite party; and that, too, after the defendants themselves had been permitted to read the answer as evidence in their own behalf. The defendants could not testify for themselves, unless at the instance and on the call of the plaintiffs, and it was for the plaintiffs to determine whether the answer was to be admitted as evidence in the cause, or not. Philips v. Thompson, 1 J. C. R. 141. The only error committed upon this point was, that the court permitted the defendants to read the answer as evidence in their own behalf. In Cox et al. v. Cox., 2 Port. R. 633, it was held, that when a bill is filed for discoveiy of testimony, thé party may use the answer, or not, as he chooses; see Lawrence v. Ocean Ins. Co., 11 J. R. 260. The case of Field v. Pope, 5 Ark. R. 66, does not establish a different rule upon that point; for the question was not at issue in the cause. In that case the defendant having obtained the plaintiff’s answer, and read it to the jury, did thereby make him his witness. The mere act of filing the petition and obtaining the answer, did not any more make the plaintiff his witness than if he had caused any other person to be summoned as a witness, and declined to use him. The plaintiffs below having declined using the answer of the defendants as evidence, were not precluded from establishing their demand by other testimony. A calculation based upon the evidence, shows the verdict is not excessive. We do not consider that there is any error in the judgment, and it is therefore, affirmed.